[Cite as *In re M.M.*, 2011-Ohio-6105.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

**IN THE MATTER OF:**

M. M.,                                                   CASE NO.  8-11-11

**DEPENDENT CHILD,**

[ELIZABETH M. -                                          O P I N I O N
    MOTHER/APPELLANT].

**Appeal from Logan County Common Pleas Court**
**Juvenile Division**
**Trial Court No. 10-CS-0066**

**Judgment Affirmed**

**Date of Decision:   November 28, 2011**

**APPEARANCES:**

*Bridget D. Hawkins*  **for Appellant**

*Deborah K. Wolf*  **for Appellee, Logan Co. Children's Services Board**

*Linda MacGillivray*  **for G.A.L. for Appellee, M.M.**

**WILLAMOWSKI, J.**

{¶1} Appellant Elizabeth M. ("Elizabeth") brings this appeal from the judgment of the Court of Common Pleas of Logan County, Juvenile Division granting permanent custody of her daughter to Appellee Logan County Children's Services Board ("LCCSB"). For the reasons set forth below, the judgment is affirmed.

{¶2} In June 2000, the minor child M.M. ("M.M.") was born to Elizabeth and an unknown father. LCCSB first became involved with Elizabeth and M.M. in 2000 in Logan Case No. 00-CS-0070. LCCSB filed a second complaint against Elizabeth in 2002 in Logan Case No. 02-CS-0077. During the second case, notice had to be sent to Elizabeth via publication because her whereabouts were unknown. On October 23, 2003, the trial court granted legal custody of M.M. to her maternal grandmother, J.S. J.S. cared for M.M. for several years, however, J.S. had to enter a nursing home in 2009 and M.M. went to live with her maternal uncle, P.M. Unfortunately for M.M., J.S. passed away on August 10, 2010. M.M. continued to live with P.M. until he was no longer able to care for her on a permanent basis. P.M. placed the child with licensed foster parents. The foster parents developed a bond with M.M. and eventually notified LCCSB that they had her and made known their desire for her to remain in their care.

{¶3} On November 12, 2010, LCCSB filed a complaint requesting emergency temporary custody of M.M. Emergency temporary custody was granted that same day. Elizabeth was notified of this development on November 23, 2010. On January 4, 2011, an adjudicatory hearing was held and M.M. was found to be a dependent child. LCCSB filed a motion for a No Reasonable Efforts Determination on January 14, 2011, which alleged that Elizabeth had abandoned her child. Elizabeth sent the trial court a letter which was filed on January 20, 2011, admitting that she had not seen her child since August of 2009 and had not spoken with M.M. since October 2010. On January 31, 2011, the dispositional hearing was held and temporary custody of M.M. was continued with LCCSB. A hearing on the No Reasonable Efforts motion was held on March 1 and April 12, 2011. At the second hearing, Elizabeth informed the trial court that she had been sentenced to prison with an expected release date of March 15, 2015. On April 20, 2011, the trial court granted the motion.

{¶4} LCCSB filed a motion for permanent custody of M.M. on March 2, 2011. The motion was based upon R.C. 2151.414(E)(2), (4), (10), and (13). A hearing was held on the motion on April 28, 2011. The trial court entered its judgment granting permanent custody of M.M. to LCCSB on May 16, 2011. Elizabeth appeals from this judgment and raises the following assignment of error.

**The trial court erred in granting permanent custody of [M.M.] to [LCCSB].**

{¶5} The right to raise one's own child is a basic and essential civil right. *In re Murray* (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169. "Parents have a 'fundamental liberty interest' in the care, custody, and management of their children." *In re Leveck*, 3d Dist. No. 5-02-52, 5-02-53, 5-02-54, 2003-Ohio-1269, ¶6. These rights may be terminated, however, under appropriate circumstances and when all due process safeguards have been followed. Id. When considering a motion to terminate parental rights, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. These requirements include in pertinent part as follows.

> **(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:**
>
> **\* \* \***
>
> **(b) The child is abandoned.**
>
> **\* \* \***
>
> **(2)    With respect to a motion made pursuant to [R.C. 2151.413(D)(1)], the court shall grant permanent custody of the child to the movant if the court determines in accordance with division (E) of this section that the child cannot be placed with**

one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division **(D)** of this section that permanent custody is in the child's best interest.

\* \* \*

**(D)  In determining the best interest of a child at a hearing held pursuant to division (A) of this section \* \* \*, the court shall consider all relevant factors, including, but not limited to, the following:**

**(1)   The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;**

**(2)   The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**

**(3)   The custodial history of the child, including whether the child has been in the temporary custody of one or more public services agencies \* \* \* for twelve or more months of a consecutive twenty-two-month period \* \* \*;**

**(4)   The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;**

**(5)   Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.**

\* \* \*

**(E)  In determining at a hearing held pursuant to division (A) of this section \* \* \* whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant**

**evidence. If the court determines by clear and convincing evidence, at a hearing held pursuant to division (A) of this section \* \* \* that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:**

**\* \* \***

**(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated within one year after the court holds the hearing pursuant to division (A) of this section \* \* \*;**

**\* \* \***

**(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;**

**\* \* \***

**(10) The parent has abandoned the child.**

**\* \* \***

**(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.**

**(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.**

R.C. 2151.414. A child is presumed abandoned when a parent has failed to visit or maintain contact with the child for more than 90 days regardless of whether contact is resumed after that period. R.C. 2151.011(C).

{¶6} A review of the record in this case indicates that Elizabeth admits that she is in prison and that her release date is not until 2015. Tr. 86. She also admits that she has been previously incarcerated due to her drug usage and that she would not contact her child while using drugs. Tr. 12-14. In addition, she testified that she had been arrested and jailed on misdemeanors more than twenty times. Tr. 14-15. This evidence supports the trial court's determination that Elizabeth has been repeatedly incarcerated which has and will continue to prevent her from parenting the child for almost four years from the hearing date.

{¶7} Elizabeth also has repeatedly admitted that she has not maintained regular contact with M.M. and that she had decided to stay out of her life because of addiction. Tr. 19, 22. At the time of the adjudicatory hearing, she had not seen M.M. in over a year. She admitted that she had not had contact of any type with M.M. in almost three months. When questioned by the trial court during the in camera interview, M.M. testified that she had not had much contact with Elizabeth while growing up and that even when Elizabeth did see her, she was not interested in spending time with her. Based upon this evidence, the trial court

reasonably found that Elizabeth had failed to have contact with her child for more than 90 days and had thus abandoned her.

{¶8} In ruling on this case, the trial court made extensive findings of fact. Specifically, the trial court found that Elizabeth's chronic drug usage and subsequent incarcerations interfered with her ability to provide M.M. with an adequate permanent home. R.C. 2151.414(E)(2). The trial court also found that Elizabeth had failed on two prior occasions to work with LCCSB on a case plans to allow her to keep M.M. Instead she chose to disappear and allow the trial court to grant legal custody of M.M. to her mother. Elizabeth did not regularly support, visit, or communicate with M.M., which showed her lack of commitment to her child. R.C. 2151.414(E)(4). Elizabeth would go extended periods of time without contacting her child. There was evidence presented that between August 2009, and October 2010, there was no communication. The trial court found that pursuant to the statutory definition of abandonment, Elizabeth had abandoned her child. R.C. 2151.414(10). Finally, the trial court determined that since Elizabeth's release date from prison was not until 2015, she would be unable to provide a home for M.M. within the next eighteen months. R.C. 2151.414(E)(12). All of these findings are supported by evidence in the record. Since there were factors present under R.C. 2151.414(E), the trial court did not err in finding that M.M. could not be placed with Elizabeth within a reasonable time.

{**¶9**} Once the trial court has made that determination, the trial court must still determine that the termination of parental rights is in the best interests of the child. R.C. 2151.414(D). The trial court individually and extensively addressed all five factors set forth in the statute in its journal entry.

> **(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;**
>
> **The Court stated that based upon the information provided by the Guardian Ad Litem through sworn testimony and the information acquired during the In-Camera Interview with the minor child, the minor child suffered a tragic loss of her grandmother, but found her foster parents. The Court further stated that the foster parents have allowed continued involvement with the minor child's biological brother and maternal uncle, and sometime in the future, she may want to have communication with her mother.**
>
> **(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**
>
> **The Court stated that the minor child is only ten (10) years old and this young lady is more mature than her chronological age. The Court further stated that based upon the wishes of the minor child and the recommendations of the Guardian Ad Litem, such are consistent with the Court granting the Agency permanent custody.**
>
> **(c) The custodial history of the child * * * ;**
>
> **The Court reiterated that pursuant to the Judgment Entries filed in Case Number 00-CS-0070 and Case Number 02-CS-0077, the Maternal Grandmother, [J.S.] was designated as the**

**temporary legal custodian on August 15, 2002, and then later on October 22, 2003, as the legal custodian of the minor child pursuant to [R.C. 2151.42]. The Court noted that during the time period the grandmother was residing in the nursing home for approximately one year prior to her death, the Maternal Uncle, [P.M.], provided care for the minor child. Due to [P.M.'s] inability to provide permanent care for the minor child, the matter was ultimately reported to [LCCSB] who in turn filed the necessary documentation with the Court to acquire permanency for the minor child.**

**(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the Agency;**

**The Court stated that it is obvious that the minor child is in need for a legally secure permanent placement and that such placement cannot be achieved without a grant of permanent custody to the Agency. The Court further stated that it can't imagine the amount of time it would take if we would wait for [Elizabeth] considering her continued substance abuse resulting in an extensive criminal history. The Court indicated that it must look at the best interest of the minor child, and that imagining the very best for the mother under the best circumstances, we wouldn't get to that point for one (1) to one and one-half (1 ½) years, and the minor child has already had to wait eight (8) years. The Court stated that it feels like we have all let the minor child down in that it has taken us over eight (8) years to really find permanency for the minor child.**

**(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and the child.**

**The Court stated that number (10) applies in this matter and such has already been discussed.**

May 16, 2011, Judgment Entry, 9-11. All of the trial court's findings were supported by the record. Therefore, the trial court did not err in finding that the

termination of Elizabeth's parental rights was in the best interests of the child. The assignment of error is overruled.

{¶10} Having found no error prejudicial to the appellant, the judgment of the Court of Common Pleas of Logan County, Juvenile Division is affirmed.

*Judgment Affirmed*

**ROGERS, P.J., and SHAW, J., concur.**

**/jlr**